Troy COLLINS and Jennilu COLLINS
*v.* STATE of Arkansas

CA CR 83-23                                          658 S.W.2d 881

Court of Appeals of Arkansas
Opinion delivered June 22, 1983
[Rehearing denied August 24, 1983.*]

*COOPER, CORBIN and GLAZE, JJ., would grant rehearing.

*Young & Finley*, for appellants.

*Steve Clark,* Atty. Gen., by: *Velda P. West,* Asst. Atty. Gen., for appellee.

GEORGE K. CRACRAFT, Judge. Troy Collins and Jennilu Collins, his wife, appeal from their conviction of the manufacture of controlled substances for which they were each sentenced to a term of 8 years and a fine of $8,000. They maintain that the trial court erred in not suppressing evidence of 350 potted marijuana plants found to be growing in their residence. They advance several arguments that the warrant pursuant to which the search was conducted was both constitutionally and statutorily defective. Additionally, Jennilu Collins contends that the evidence was insufficient to support a finding that she was a participant in the illegal activity. We find no merit to these arguments.

Appellants first contend that the evidence obtained during the search of their residence should have been suppressed because the warrant was issued on information of an informant obtained while within the curtilage of their home at a time when he was acting as an agent of the sheriff and not as a private citizen. We do not agree.

Deputy Sheriff Decker testified that he first received information that the appellants were in possession of marijuana plants through a confidential informant. When he found out that some time had passed since the informant had obtained his information he told him that he could not act on it unless he knew that the marijuana plants were still there. About a week later the informant returned to the Sheriff's office and confirmed that the plants were still at the house where he had seen them the first time. Acting on this information the officers obtained a search warrant. Appellants contend that the informant was an agent of the State when he observed the marijuana plants the second time and was not acting as a private individual. It is recognized that the search and seizure clauses of the Federal and State Constitutions restrain only the government and its agents and not private individuals. The rule, however, differs where the search is instigated or encouraged by the police and in such instances the restraints do apply, "as a con-

struction to be attached to the fourth amendment does not permit of an evasion by circuitous means." The protection thus afforded may be violated just as effectively through the intervening agency of one who is not a policeman. *Smith* v. *State,* 267 Ark. 1138, 594 S.W.2d 255 (1980).

We agree with the principle relied upon but do not agree that the facts in the case before us bring that principle into play. The deputy merely told his informant that his information was stale and that he could not act on it without more recent information. He did not give the informant any instructions or accompany him to the appellants' house. The informant was not an employee of the Sheriff's office and according to Officer Decker he had furnished the Sheriff's office with reliable information on but two prior occasions.

This argument is actually based on one statement of Deputy Decker. On cross-examination the officer testified that his informant had been to the appellants' house on several occasions and that he "partied a lot and knew a lot of people. He was there strictly on a friendly basis." He testified that the informant went to their house as a guest. Later in the cross-examination counsel again questioned him regarding the informant. He asked the officer if he "sent your informant out there a second time to check it out again?"

A. At the time he told me of it, I said, well, ask him how long and he said, seems to me like it was more than I thought it would have been, you know, admissible for me to jump up and make a search warrant. So, that's why I sent him back a second time, yes, sir.

Q. What did you tell him to do?

A. I just said, I told him, — *I didn't actually tell him to do nothing.* I said, if it's still there, I said, I'll file for a search warrant, but I said, I can't just up and file on something you seen a long time ago, I've got to have it in recent times. As I recall, the second time, I believe my informant saw it through the window, as I understood.

I don't remember it directly, but I know that's how it was. (Emphasis added)

The trial court specifically found that the informant was acting as a private citizen and not as an agent of the State at the time of the second observation. Appellants argue that the officer's statement that he sent him there mandates a different conclusion. Throughout his entire testimony the officer had always maintained that he gave the informant no instructions and there was no indication that he "sent him" back. The only reference to it was in response to counsel's questions suggesting that he had done so. The trial court considering all of his testimony concluded that he did not send the informant to the Collins home on any instructions. We cannot say the trial judge abused his discretion in denying the motion to suppress based on this contention.

The appellants next contend that the affidavit on which the search warrant was issued was not specific as to time in that it gave no positive statement as to when the informant saw the marijuana growing at the appellant's home. We agree that the proof which must be made before a search warrant can be issued must be of facts which justify a finding that probable cause exists *at the time the warrant is issued* and not at some remote time. Whether the proof meets this test must be determined by the circumstances of each case. The issuing magistrate must be able to reasonably infer the existence of probable cause at the time of issuance. In *Cardozo & Paige* v. *State,* 7 Ark. App. 219, 646 S.W.2d 705 (1983) the majority of this court followed the rules announced in *Baxter* v. *State,* 262 Ark. 303, 556 S.W.2d 428 (1977) that affidavits for search warrants must be tested and interpreted by magistrates and courts in a "common sense and realistic fashion." The likelihood that evidence sought is still in place is a function not simply of watch and calendar but of variables that do not punch a clock, for example the characters of the crime, of the criminal, and of the thing to be seized. The length of delay is to be considered along with the nature of the unlawful activity in the light of common sense.

As stated in *Cardozo & Paige,* the growing of marijuana is an illegal activity of a continuing nature. The magistrate

could easily believe that the information contained in that affidavit indicated "an on-going business rather than a mere isolated violation," *United States* v. *Johnson,* 461 F.2d 285 (10th Cir. 1972).

The appellants next contend that the search warrant was issued exclusively upon the hearsay testimony of a confidential informant whose reliability was not established. We do not agree. In *Baxter* v. *State, supra,* the court in applying the common sense and realistic approach to assessing of affidavits of this nature said that magistrates should base their judgments upon a common sense reading of the entire affidavit in determining the probability of finding contraband in a particular place.

The affidavit contained the following statements:

That a confidential informant contacted me and told me he had been in Troy Collins' residence and had seen marijuana growing in the subject's home; that my informant has seen marijuana growing before and knows what it is. My informant has proved his reliability in the past with information he gave me on other occasions. He is afraid of great bodily harm if his name be used. His information has always proved to be true and reliable.

. . . .

The reliability of said informant has been previously established by:

The fact that he has given us information in the past that has proved out to be true and helped to solve cases.

This information established the underlying circumstances on which the informant based his conclusion that the object of the search was where he said it was. He was familiar with the appearance of marijuana and had seen it in the appellants' home. Also included were the circumstances in which the officer concluded that the informant was

credible and reliable. Rule 13.1 (b), Arkansas Rules of Criminal Procedure requires that if the affidavit is based on hearsay the affiant 1) shall set forth particular facts bearing on the informant's reliability and 2) shall disclose as far as practicable the means by which the information was obtained. We conclude that this affidavit met the requirements of that rule and of *Aguilar* v. *Texas*, 378 U.S. 108, 84 S. Ct. 1509, 12 L.Ed.2d 723 (1964). We find no merit to this contention.

Appellants next contend that the search warrant did not contain a sufficient description of the premises to be searched. They argue that the description merely referred to a 7.6 acre tract within a larger 40 acre one. After the officer determined to apply for a search warrant, he drove to the Collins residence, carefully determining the actual mileage between it and the courthouse and observing the names of all streets and highways leading to it. The affidavit, after describing the 40 acre tract in which the residence was located, contained the words "further information on map attached." Attached to the affidavit was a detailed map that showed the location of the Troy Collins residence with reference to roads and highways. It contained the following:

> Take Highway 7 South out of Jasper. Stay on Hwy. 7 South approximately 14 miles to Cowell. As you come into Cowell there will be a white house on your left and about 200 yards further on the right will be a trailer house. Across from the trailer on the left is a dirt road with a sign that says 'Knights in the Ozarks Camp Ground.' Turn left there, go about 500 feet or first house on right and this will be the Troy Collins residence.

The sufficiency of such a description was addressed in *Nichols* v. *State*, 273 Ark. 466, 620 S.W.2d 942 (1981). In *Nichols* the court held that an affidavit which gives such detailed directions for leaving the courthouse and traveling specified roads to reach the area to be searched that the officer who executes the warrant would have no problems in following the directions and finding the property was a sufficient description. We find no error.

The appellants next contend that there were many "smaller deficiencies in the procedure." They argue that there was no evidence showing that the warrant had been returned to the municipal court. There was no return endorsed on the warrant and nothing to show that it was received by the court because the blanks provided for the day of return and the signature line for the judge or clerk were blank. They also contend that the warrant does not state when it was to be returned. Officer Decker testified he believed that a return was made but did not know when.

They argue that the cumulative effect of non-compliance with the rules of criminal procedure governing search warrants constituted such a substantial violation of their constitutional rights that the motion to suppress should have been granted. We do not agree. Rule 16.2 (e), Arkansas Rules of Criminal Procedure provides that a motion to suppress evidence should be granted only if the court finds that the violation upon which it is based was substantial or otherwise required by the constitution. The rule further provides that in determining whether a violation is substantial the court should consider all of the circumstances including:

(i) the importance of the particular interest violated;
(ii) the extent of deviation from lawful conduct;
(iii) the extent to which the violation was willful;
(iv) the extent to which privacy was invaded;
(v) the extent to which exclusion will tend to prevent violation of these rules;
(vi) whether, but for the violation, the things seized would have been discovered; and
(vii) the extent to which the violation prejudiced the moving party's ability to support his motion, or to defend himself in the proceedings in which the things seized are sought to be offered in evidence against him.

Although appellants point out to us these smaller deficiencies they do not point out to us in what manner they were substantial enough to warrant suppression of evidence. The clear wording of Rule 16.2 (e) and *Baxter* v. *State, supra* commits us to a realistic approach in determining if there

has been substantial compliance with detailed rules which were promulgated in order to protect practical constitutional rights. As stated in *Baxter* a commonsense and realistic approach is appropriate because such warrants are ordinarily "drafted by non-lawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area." We find no merit to this contention.

The appellants finally contend that the testimony of the laboratory technician who analyzed the marijuana should have been stricken. We do not agree. They base this contention on the fact that the laboratory technician did not receive the test from the Sheriff and could only testify from records of one who had previously had custody. The medical witness testified that he believed that it had been delivered to an employee of the laboratory who was no longer working there. The evidence establishes clearly that Sheriff Watkins carefully collected the contraband and took samples and packaged them himself. He personally delivered these samples to a person at the laboratory who labelled them showing they had been received from Sheriff Watkins. The medical witness testified that the samples he tested were delivered to him in a sealed envelope which bore that notation. We conclude that the chain of custody was sufficiently established. In *Gardner* v. *State,* 263 Ark. 739, 569 S.W.2d 74 (1978) the court stated:

> We do not say that the chain of custody of the tapes is insignificant, but when there is little likelihood that there has been any tampering with an exhibit, admission into evidence is not an abuse of discretion.

We find no error in the trial court's determination that the chain of custody of these samples was sufficiently established.

Appellant Jennilu Collins contends that the court erred in not directing a verdict in her favor. Ms. Collins argues that there was no testimony that she had been living in the residence for any length of time and that she had denied to

the officers both that she lived there and that she owned the marijuana. We do not agree. The evidence shows that Ms. Collins was present at the residence when the search was undertaken, that she was married to the appellant, Troy Collins, and that at the time she was arrested she stated to the officers "I've got to get my clothes." According to the officers she then took clothes from a closet in the bedroom containing women's clothes that seemed to fit her. Although there was no testimony offered by the defense the jury could reasonably infer that a wife ordinarily resides with her husband. We conclude that the evidence of her marriage to Troy Collins, the fact that she was in the residence at the time of the arrest and had her clothing there, and the fact that there were about 350 marijuana plants growing in plastic containers in various parts of the house including the bedroom were sufficient evidence to support the jury's finding that she was an active participant in the possession and manufacture of this controlled substance.

Affirmed.

COOPER, CORBIN and GLAZE, JJ., dissent.

JAMES R. COOPER, Judge, dissenting. I respectfully dissent for the reason that the majority opinion has again condoned the use of evidence which should have been suppressed due to a defective affidavit for a search warrant. On this point the facts of the case at bar are virtually identical to those in *Cardozo v. State*, 7 Ark. App. 219, 646 S.W.2d 705 (1983). This Court affirmed, by a 3-3 vote, the trial court's refusal to suppress the evidence in *Cardozo, supra*, and I dissent for the reasons expressed in my dissenting opinion in that case. Although "techical requirements of elaborate specificity . . . have no proper place in [the] area [of search warrants]", *United States v. Ventresca*, 380 U.S. 102 (1965), I cannot agree that requiring law enforcement officers to include the time they observed the illegal activity in their affidavits is either a technical or elaborate requirement.

I respectfully dissent.

GLAZE and CORBIN, JJ., join in this dissent.