Allen Lee POLK *v.* STATE of Arkansas

CR 96-1426 947 S.W.2d 758

Supreme Court of Arkansas
Opinion delivered June 23, 1997

*Herbert T. Wright, Jr., P.A.*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Gil Dudley*, Asst. Att'y Gen., for appellee.

TOM GLAZE, Justice. Appellant Allen Polk was charged as a habitual offender with (1) being a felon in possession of a firearm under Ark. Code Ann. § 5-73-103(a)(1) (Supp. 1995), and with two class C misdemeanors, (2) disorderly conduct, and (3) obstructing governmental operations. At a bench trial, the circuit judge found Polk guilty on all charges. He sentenced Polk to six years on the felony count and ninety days and a $1,000 fine on the misdemeanor crimes, to run concurrently. On appeal, Polk's sole argument is that, under Ark. Code Ann. § 5-2-604 (Repl. 1993), commonly labeled the choice-of-evils defense, he was justifiably in possession of the gun found on him when arrested, and asks that his case be remanded for a new trial.

Polk commences his contention by arguing that the constitution and legislation provides for all citizens to defend themselves regardless of their classification. He specifically relies on § 5-2-604(a)(1) and (2) as an affirmative defense, which in relevant part provides as follows:

> (a) Conduct which would otherwise constitute an offense is justifiable when:

(1) The conduct is necessary as an emergency measure to avoid an imminent public or private injury; and

(2) The desirability and urgency of avoiding the injury outweigh, according to ordinary standards of reasonableness, the injury sought to be prevented by the law proscribing the conduct.

In arguing § 5-2-604's applicability, Polk points to his and his fiancee's (Virginia Irene Johnson's) testimony where they claimed they met a "John" and his wife at the Arkansas River "somewhere" in North Little Rock. During the initial visit, Polk and Virginia claim they agreed to meet at John's house. Upon arrival, Polk suggests John wanted to show him some bombs and books on how to make them, and sometime after discussing the subject, "John placed a fake bomb and bomb information or material in Polk's truck." Polk said that he complained about John placing the bomb and material in the truck, and John sometime thereafter pulled a gun on him. In self-defense, Polk said he snatched the gun from John. Polk admitted both he and John were drunk. Polk called for Virginia, and during this period, John allegedly had obtained a crowbar, and struck Polk on his arm, fracturing it. Polk shot the gun to scare John, threw the gun in the seat of his truck, and he and Virginia drove away and returned to Virginia's house in Vilonia in Faulkner County.

After returning to Virginia's house, Polk said that he called the Faulkner County Sheriff's Office, and upon the officers finding a gun on Polk, they cuffed and arrested him. Polk further testified that he had never intended to keep the gun found on him. In her testimony, Virginia confirmed most of Polk's story, but she claimed (contrary to Polk's own testimony) that she would not have called Polk drunk. Virginia added that, when they returned to Faulkner County, Polk retrieved the gun from the truck and took it into her house. She also said she knew Polk had just been released from the penitentiary, but she did not know he was not to possess a weapon.

In sum, Polk's justifiable defense argument is that, under § 5-2-604(a)(1) and (2), having someone pull a gun on him constituted an emergency measure, and the urgency of avoiding the

injury outweighed the harm sought to be prevented by § 5-73-103, which prohibits a felon from possessing a firearm. Because he chose to flee and notify the police concerning the firearm, Polk concludes that his conduct is not the type the General Assembly intended to punish.

■ First of all, Polk's argument wholly ignores subsection (c) of § 5-2-604, which provides that the justification defense is unavailable if the actor is reckless or negligent in bringing about the situation requiring a choice of evils or in appraising the necessity for his conduct. It has been said that, the choice of evils, or more modernly called the defense of necessity, is a rarely used defense. *See* WAYNE R. LaFAVE, ET AL., CRIMINAL LAW § 5.4, at 441–450 (2d ed. 1986). We mention, too, *Maryland v. Crawford*, 521 A.2d 1193 (1987), where the Maryland Supreme Court held that necessity is a valid defense to the crime of unlawful possession of a handgun when five elements are present. The Maryland Court stated the following:

> (1) the defendant must be in present, imminent, and impending peril of death or serious bodily injury or reasonably believe himself or others to be in such danger; (2) *the defendant must not have intentionally or recklessly placed himself in a situation in which it was probable that he would be forced to chose the criminal conduct*; (3) the defendant must not have any reasonable, legal alternative to possessing the handgun; (4) the handgun must be made available to the defendant without preconceived design; and (5) *the defendant must give up possession of the handgun as soon as the necessity or apparent necessity ends.* We emphasize that if the threatened harm is property damage or future personal injury, the defense of necessity will not be viable; nor can the defense be asserted if the compulsion to possess the handgun arose directly from the defendant's own misconduct. *Maryland v. Crawford*, 521 A.2d 1193 (1987). (Emphasis added.)

Consistent with such observation, § 5-2-604 is to be narrowly construed and applied. *See Koonce v. State*, 269 Ark. 96, 598 S.W.2d 741 (1980).

■ Here, Polk conceded that, as a parolee, he knew he was not allowed to leave Faulkner County; nonetheless, he did. He had been drinking all day, and admitted he was drunk. Obvi-

ously, even by his own testimony, Polk had knowingly and recklessly placed himself in a position or in circumstances where he could get into trouble — if for nothing else, for violating parole conditions. Also, our case law is well settled that the trial court was not required to believe Polk's version of what occurred, especially since Polk had an interest in the outcome of the proceedings. *See Patterson v. State*, 306 Ark. 385, 815 S.W.2d 377 (1991); *Hudson v. State*, 294 Ark. 148, 741 S.W.2d 253 (1987).

In summarizing the evidence, the trial judge revealed there were several factors about the case that concerned him. The judge was bothered that "John" could not be identified and that, if Polk's concern was to give John's gun to law enforcement, Polk could have traveled a short distance to the North Little Rock Police Department to turn in the firearm or he could have given the weapon to Conway's or Vilonia's police. He also could have called his parole officer. From the defense's testimony, the judge further did not understand how or why the firearm was found in Polk's possession after it was first placed in Polk's truck, and then seen in Virginia's house, if Polk's only intention was to turn the gun over to the police. To confuse this matter further, the Faulkner County officers testified that they were called regarding a "bomb threat" and that was what the officers said they were investigating when arriving at Virginia's house — not a firearm. In fact, Polk never mentioned a gun, until an investigating officer asked Polk to take his hand out of his pocket. Only then did Polk reveal he had a gun in his possession.

In conclusion, we believe the record supports the trial court's holding that Polk was not justified in possessing the firearm, and therefore we affirm.