Sherrell Jean WHISENANT *v.* STATE of Arkansas

CA CR 01-1418                                        146 S.W.3d 359

Court of Appeals of Arkansas
Division III
Opinion delivered February 11, 2004

*Self Law Firm*, by: *Joseph C. Self*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Linda Blackburn*, Ass't Att'y Gen., for appellee.

ANDREE LAYTON ROAF, Judge. Sherrell Jean Whisenant was convicted of possession of firearms by a felon, one count of theft of property, and four counts of financial identity fraud. She was sentenced to a total of six years' imprisonment. On appeal, Whisenant argues that the trial court erred in: (1) denying her motion for a continuance to allow her to obtain transcripts of previous proceedings; (2) denying her motion to suppress evidence found following a warrantless search of her purse; (3) failing to give a requested jury instruction on the defense of choice of evils; (4) failing to grant her motions for directed verdict on the charges of theft and financial identity fraud. We agree that the trial court erred in denying her motion to suppress evidence found in her purse and reverse on this point.

At trial, Virgil Hellums testified that Whisenant was his girlfriend and that she lived at his house. According to Hellums, Whisenant had told him that she was on probation for using her sister-in-law's social security number to acquire a vehicle and that she was not a felon, but he began to doubt this claim. On the evening of January 13, 2001, Hellums arranged to meet with Deputy Sheriff Preston Glen from the Pike County Sheriff's Department, who verified his suspicions about Whisenant. Hellums informed Glen that Whisenant had firearms in his house and gave his consent to a search of his home, after first removing his own firearms from the house. When they arrived at the residence, Hellums took Glen into the bedroom and showed him two firearms belonging to Whisenant in plain view near the dresser. Whisenant stated that the guns came from her ex-husband. Glen then arrested Whisenant, who was present in the house, and she was transported to the detention center.

After a Department of Human Services caseworker, Regina Dowdle, came to the residence to arrange for someone to care for Whisenant's minor children, Deputy Glen testified that he returned to the sheriff's department and was attempting to book Whisenant. Glen stated that Whisenant had given him several different names and dates of birth and that he could not find her information on the computer. He returned to Hellums's residence at approximately 2:00 a.m. on January 14 and explained that he could not find any identification for Whisenant. Hellums stated that he might be able to help and grabbed a purse off a table in the

kitchen. Hellums started to search a large wallet from the purse and found two of his credit cards inside the wallet, along with a list of other credit card numbers, expiration dates, and Hellums's name, social security number, and date of birth. Hellums then retrieved a stack of credit cards that he had in his bedroom and matched up several of these cards with the credit card numbers on the list from the wallet.

Glen testified that they had still not located any identification, so Hellums handed him another smaller wallet that was in the purse. Glen stated that he found three checks belonging to Ms. Retha Johnson on one side of this wallet and found checks belonging to Timmy Stone and to Jack Stone on the other side of the wallet. Glen testified that he then saw the edge of a plastic card inside a partially opened zipper part of the wallet and found Whisenant's driver's license. According to Glen, a bank printout with Jack Stone's name and loan number was also in the wallet, and on the list from the larger wallet were Jack Stone's name, social security number, and bank account number. On the back of that list, Glen testified that there was also a list of some of Jack Stone's real and personal property. In addition, Glen testified that Regina Dowdle, the DHS caseworker, had found two property deeds belonging to Jack Stone inside Whisenant's van when she was at the residence earlier that evening.

Whisenant argues that the trial court erred in denying her motions for directed verdict on the charges of theft of property and financial identity fraud. She contends that the State failed to prove that she had the intent to unlawfully appropriate the property or financial resources of any of the victims. Although Whisenant makes this argument as her fourth point on appeal, this court is required to address challenges to the sufficiency of the evidence first due to double jeopardy considerations. *Steggall v. State*, 340 Ark. 184, 8 S.W.3d 538 (2000).

A motion for a directed verdict is a challenge to the sufficiency of the evidence. *Id.* On appeal from a denial of a motion for directed verdict, the sufficiency of the evidence is tested to determine whether the verdict is supported by substantial evidence, direct or circumstantial. *Id.* In determining whether there is substantial evidence to support the verdict, this court reviews the evidence in the light most favorable to the State and considers only that evidence which supports the verdict. *Id.* Substantial evidence is that evidence which is of sufficient force and character to compel

a conclusion one way or the other beyond suspicion or conjecture. *Id.* The fact that evidence is circumstantial does not render it insubstantial; however, when circumstantial evidence is relied upon, it must exclude every other reasonable hypothesis other than the guilt of the accused. *Id.* The question of whether circumstantial evidence excludes other reasonable hypotheses is for the fact finder to determine. *Id.*

A person commits financial identity fraud if, with the intent to unlawfully appropriate financial resources of another person to his or her own use or to the use of a third party, and without the authorization of that person, he or she obtains or records identifying information that would assist in accessing the financial resources of the other person. Ark. Code Ann. § 5-37-227(a)(1)(A) (Supp. 2003). "Identifying information" includes, but is not limited to, social security numbers, driver's license numbers, bank account numbers, credit card numbers, personal identification numbers, or any other numbers or information that can be used to access a person's financial resources. Ark. Code Ann. § 5-37-227(a)(2) (Supp. 2003).

Whisenant's convictions for four counts of financial identity fraud involve the identifying information of Virgil Hellums, Tim Stone, Jack Stone, and Retha Johnson. Virgil Hellums testified that he found in Whisenant's wallet, in addition to two of his credit cards, a list of other credit card numbers belonging to him, along with the expiration dates, his birth date, full name, and social security number. Hellums testified that this list was in Whisenant's handwriting. Whisenant claimed that she had written down this information because she had lost her wallet a couple of months earlier, and Hellums had instructed her that she needed to have a list of everything in case it happened again. Thus, she stated that she had written down both of their credit card numbers and other information for this purpose. However, Hellums stated that he did not give Whisenant permission to write down his credit card information or other identifying information.

Tim Stone testified that Whisenant had lived in his house during October and November of 2000. He identified one of his checks found in Whisenant's wallet as one that had been voided and which had his social security number on it. He testified that he did not authorize Whisenant to have possession of this check at any time.

Jack Stone testified that a check found in Whisenant's possession was one of his checks and that it had his social security

number on it. He also identified some of his bank loan documents that were found in Whisenant's possession. Whisenant claimed that she had this information because Stone was planning on getting a new vehicle and that she was assisting him in getting together the information he would need to get a loan. However, Stone testified that he did not authorize anyone to have possession of this check or the loan documents.

Finally, Retha Johnson testified that Whisenant had been in her house while she was in the hospital in December 2000. She stated that her three checks found in Whisenant's possession came from a checkbook that had been lying on her bedroom dresser. Whisenant stated that Johnson had given her three bags of children's clothing and that she found the checks in with the clothes. Whisenant testified that she placed the checks in the ashtray in her vehicle so that she could return them when she next saw Johnson. However, Johnson denied Whisenant's explanation and testified that she did not authorize Whisenant to have possession of these checks at any time.

Because there was no evidence that she had used any of the victims' financial information, Whisenant argues that the State failed to prove that she had the intent to unlawfully appropriate the financial resources of these victims. Intent can seldom be proven by direct evidence and must usually be inferred from the circumstances surrounding the crime. *Taylor v. State*, 77 Ark. App. 144, 72 S.W.3d 882 (2002). The jury is allowed to draw upon its common knowledge and experience to infer intent from the circumstances. *Id.*

Contrary to Whisenant's argument, there was sufficient evidence presented in this case to support her convictions for financial identity fraud. Whisenant had possession of financial information belonging to four different persons, all of whom denied giving her permission to have this information. In addition, there was testimony by Annette Stone, who was friends with Whisenant, that Whisenant showed her Hellums's stack of credit cards at his house on one occasion and joked as to how much he trusted her and as to "where she might go with these cards." Although Whisenant had explanations for possessing much of this financial information, the victims denied these explanations, and the jury is not required to believe her testimony, which is self-serving. *Sera v. State*, 341 Ark. 415, 17 S.W.3d 61 (2000).

Whisenant's conviction for theft of property was based on her possession of two of Hellums's credit cards, along with his other credit card numbers. A person commits theft of property if he knowingly takes or exercises unauthorized control over, or makes an unauthorized transfer of an interest in, the property of another person, with the purpose of depriving the owner thereof. Ark. Code Ann. § 5-36-103(a)(1) (Supp. 2003). The theft of credit cards or credit card account numbers is a Class C felony. Ark. Code Ann. § 5-36-103(b)(2) (Supp. 2003).

Whisenant again argues that there was insufficient evidence that she possessed this property with the purpose of depriving Hellums of it. However, Hellums testified that he did not give her permission to possess his credit cards or credit card numbers. As discussed above, given the evidence that she possessed financial information of four different persons without their permission and that she had joked to a friend as to how much Hellums trusted her and as to where she could go with the cards, there is substantial evidence to support her conviction for theft of property.

Whisenant next argues that the trial court erred in denying her motion for a continuance, filed the day prior to trial, to allow her to obtain transcripts from her revocation hearing held several days before her trial. She argued that she needed these transcripts for possible impeachment purposes and trial preparation, as the revocation hearing involved many of the same witnesses as would testify in the trial. Whisenant argues that the denial of her motion amounted to a denial of justice because she was unable to cross-examine the witnesses with the "full arsenal" available to her.

When reviewing the grant or denial of a motion for continuance, the appellate court employs an abuse-of-discretion standard. *Ware v. State*, 348 Ark. 181, 75 S.W.3d 165 (2002). The appellant must not only demonstrate that the trial court abused its discretion by denying the motion, but must also show prejudice that amounts to a denial of justice. *Id.*

Although Whisenant claims that the transcripts from her revocation hearing were necessary to impeach the credibility of the witnesses testifying at trial, she admits that she cannot identify specific instances where the availability of the transcript would have made a difference in the outcome of the trial. This is so despite the fact that she was present at the revocation hearing

and heard the testimony of the witnesses. As the trial court noted in denying her motion, in effect, Whisenant was able to obtain a "preview" of her trial during the revocation hearing, an opportunity most defendants do not have. She was able to use her notes from the hearing to impeach witnesses during her trial, even without the transcript. Thus, Whisenant is unable to demonstrate prejudice from the denial of her motion. *See McArdell v. State*, 38 Ark. App. 261, 833 S.W.2d 786 (1992) (holding that the defendant was not entitled to delay the trial in order to obtain a transcript from a prior proceeding where the trial was held a short time after the prior proceeding, the defendant had the same counsel at both proceedings, counsel had ample opportunity to cross-examine and impeach the witnesses, and the defendant did not show how he suffered any prejudice in not having the transcript). The State also objected to the continuance, as it had already agreed to one earlier continuance to allow the defense more time to prepare. Therefore, Whisenant has failed to show that the trial court abused its discretion in denying her motion for a continuance, and we affirm on this point.

Whisenant next argues that the trial court erred in denying her motion to suppress evidence found following a warrantless search of her purse. Prior to trial, Whisenant filed a motion to suppress the credit cards and other evidence found in her purse. She argued that the items seized subsequent to her incarceration were not incident to arrest, were not within the scope or authority of anyone who may have previously given consent to search, and were within her reasonable expectation of privacy. She asserted that the search of her purse by Hellums, at the direction of Deputy Glen, and the subsequent seizure of the evidence found in her purse were illegal. After a suppression hearing, the trial court denied Whisenant's motion, stating that Hellums was not considered by the court to be an agent on behalf of the State.

When reviewing a trial court's denial of a motion to suppress evidence, the appellate court makes an independent determination based on the totality of the circumstances and reverses only if the ruling is clearly against the preponderance of the evidence. *Morrow v. State*, 73 Ark. App. 32, 41 S.W.3d 819 (2001).

As Whisenant contends, her purse was an item in which she had a reasonable expectation of privacy. *See Evans v. State*, 65 Ark. App. 232, 987 S.W.2d 741 (1999) (holding that an

individual's expectation of privacy in a purse or handbag is probably greater than in any other property except the clothing worn by a person). The Fourth Amendment protects persons against unreasonable searches and seizures, and all searches conducted without a valid warrant are unreasonable unless an exception applies. *Id.*

██ ██ However, the Fourth Amendment's prohibition against unreasonable searches and seizures does not apply to searches conducted by private citizens not acting as an agent of the government or with the participation or knowledge of a government official. *United States v. Jacobsen*, 466 U.S. 109 (1984); *Winters v. State*, 301 Ark. 127, 782 S.W.2d 566 (1990); *Morrow v. State, supra*; *Collins v. State*, 9 Ark. App. 23, 658 S.W.2d 881 (1983). Only when it is established that the private individual acted at the request or direction of, or in a joint endeavor with, a law enforcement agency or officer can he be considered an arm of the government. *Winters, supra*; *Morrow, supra.* "If a search and seizure is instigated or encouraged by the police, Fourth Amendment constraints are applicable, 'as the construction to be attached by the Fourth Amendment does not permit evasion by circuitous means.' " *Morrow, supra*, 73 Ark. App. at 35, 41 S.W.3d at 821 (quoting *Smith v. State*, 267 Ark. 1138, 594 S.W.2d 255 (Ark. App. 1980)). The mere presence of government agents and their observation of the private person's actions does not necessarily turn a private search into a joint effort; however, the Fourth Amendment may be implicated where the government agents acquiesce to or indirectly encourage a private person's search. *United States v. Reed*, 15 F.3d 928 (9th Cir. 1993).

██ Other courts interpreting these principles have set out a two-part test to determine whether an individual is acting as an agent of the government for Fourth Amendment purposes: (1) whether the government knew of and acquiesced in the intrusive conduct; and (2) whether the party performing the search intended to assist law enforcement efforts or to further his own ends. *United States v. Souza*, 223 F.3d 1197 (10th Cir. 2000); *United States v. Reed, supra*; *State v. Jorgensen*, 660 N.W.2d 127 (Minn. 2003); *Dawson v. State*, 106 S.W.3d 388 (Ct. App. Tex. 2003). Both of these prongs must be satisfied before the private search may be deemed a government search. *United States v. Souza, supra.* Another factor that has been considered is whether the government re-

quested the action or offered the private actor a reward. *United States v. Segal*, 276 F. Supp.2d 896 (N.D. Ill. 2003).

█ If the private actor is not determined to be an agent of the law enforcement agency, his actions do not violate the Fourth Amendment because of their private character. *United States v. Jacobsen, supra.* However, the government agency may not then exceed the scope of the private search unless it has the right to make an independent search. *Id.* For example, in *Walter v. United States*, 447 U.S. 649 (1980), a private party opened a misdirected carton, found rolls of motion picture films that appeared to be contraband, and turned the carton over to law enforcement. Later, without obtaining a warrant, the law enforcement agents obtained a projector and viewed the films. *Id.* The Court found that because the private party had not actually viewed the films, the actions of the government in viewing them was a "significant expansion of the search that had been conducted previously by a private party and therefore must be characterized as a separate search." *Id.* at 657. The opposite result was reached in *Jacobsen, supra*, where the search by the private party actually revealed that the package contained contraband. Thus, although the private party only cut one end of the package open, the Court held that there was no additional intrusion by the government agency in removing plastic bags containing the contraband from the package and visually inspecting them where the agent learned nothing that had not previously been learned during the private search. *Id.*

█ Applying the foregoing principles to the present case, we find that the warrantless search of Whisenant's purse violated the Fourth Amendment. The testimony presented at the suppression hearing established that Deputy Glen went to Hellums's residence several hours after Whisenant was arrested for the purpose of finding identification on her. Glen requested that Hellums assist him in finding identification, and then, in the presence of Glen, Hellums grabbed Whisenant's purse from the kitchen and proceeded to search it. When Hellums opened one of Whisenant's wallets, he immediately found two of his credit cards inside. Hellums then noticed a list in that same wallet, containing credit card numbers and other financial information. After Hellums determined that his other credit card numbers were also on that list, Glen testified that Hellums then turned that wallet over to him. However, it is apparent from a close reading of Glen's

testimony that there was another smaller wallet, which Glen also searched and in which he found Whisenant's driver's license and the checks and other documents belonging to Retha Johnson, Jack Stone, and Tim Stone.[1] Thus, Glen's search exceeded the scope of Hellums's search, and Glen needed additional justification for this search of the smaller wallet. *Walter v. United States, supra.*

Moreoever, even if Glen's search did not exceed the scope of Hellums's search, we conclude that Hellums was an agent of the police under the two-part test set out above. First, Glen knew and acquiesced in the intrusive conduct of Hellums, as he requested assistance in obtaining identification on Whisenant, then observed Hellums take Whisenant's purse and search it, including the wallets. Second, Hellums was intending to assist law enforcement efforts when he searched the purse, as there was no evidence presented that he had his own purpose for finding Whisenant's identification. Also, the other factor that has been considered, whether law enforcement requested the private party's actions, is present in this case as well, as Glen requested that Hellums help find some identification.

In a case with similar facts, *Tucker v. Superior Court of Fresno County*, 84 Cal. App. 3d 43, 148 Cal. Rptr. 167 (1978), the court held that there was police involvement in the search and seizure, where the police officer, who had a restaurant employee detained in his police vehicle, went inside the restaurant and requested the suspect's jacket from a waitress. The officer then followed the waitress and observed as she opened his locker and retrieved the jacket. *Id.* The court stated that the waitress was acting as an agent of the police because the officer initiated the search and because the locker was only opened pursuant to the officer's request. *Id.* In this case, the officer's request for identification also initiated the search of Whisenant's purse. Also, if the government agent assists the private party in the search, or has a hand in it before the object of the search has been accomplished, he must be deemed to have participated in it. *United States v. Souza, supra.* Here, Deputy Glen assisted and had a hand in the search, as he was the one that found the identification, which was the object

---

[1] The fact that Glen searched this wallet, not Hellums, is even more clear from Glen's testimony at trial, where he states that he searched the small wallet, including the zippered compartment containing the driver's license.

of the search. For these reasons, we conclude that Hellums was an agent of the police and that the warrantless search of Whisenant's purse violated the Fourth Amendment. Thus, the trial court erred in denying her motion to suppress the evidence found in the purse.

For her last argument, Whisenant contends that the trial court erred in refusing to give her proffered jury instruction on the "choice of evils" defense. Whisenant testified at trial that she possessed the two firearms because they were evidence to prove that she did not commit arson in another criminal case, in which the charges against her had been dismissed the year before. According to her testimony, the guns belonged to her ex-husband and were supposed to have been burned in the fire. When she found them after the fire at her ex-husband's parents' house, she testified that she confiscated them, believing them to be exculpatory evidence because they would show that her ex-husband started the fire and not her.

According to Ark. Code Ann. § 5-2-604(a) (Repl. 1997), conduct which would otherwise constitute an offense is justifiable when the conduct is necessary as an emergency measure to avoid an imminent public or private injury, and the desirability and urgency of avoiding the injury outweigh, according to ordinary standards of reasonableness, the injury sought to be prevented by the law proscribing the conduct. This section is to be narrowly construed and applied. *Koonce v. State*, 269 Ark. 96, 598 S.W.2d 741 (1980); *Pursley v. State*, 21 Ark. App. 107, 730 S.W.2d 250 (1987). The commentary to section 5-2-604 states that conduct that would ordinarily be criminal may be excused because of extraordinary attendant circumstances and that this section requires comparing the injury the actor caused with the injury he sought to prevent. The commentary also lists illustrations of situations that might permit recourse to this defense, such as: (1) the destruction of buildings or other structures to keep fire from spreading; (2) breaking levees to prevent flooding a city, while in the process causing flooding of an individual's property; and (3) temporary appropriation of another's vehicle to remove a seriously injured person to a hospital.

In *Polk v. State*, 329 Ark. 174, 947 S.W.2d 758 (1997), the court held that the defendant was not entitled to an instruction on the "choice of evils" or "necessity" defense in a charge of being a felon in possession of a firearm. The defendant argued that he took the gun away from a person with whom he was fighting in

self-defense and that he then drove home, took the gun out of the car, and called the police. *Id.* The court noted that, in addition to recklessly placing himself in that position, the defendant's story was not credible, as he could have traveled a short distance to the police department and turned the gun over to authorities, or to his parole officer, instead of taking it home and into his house. *Id.*

██ ██ In this case, as in *Polk, supra,* if Whisenant's concern was truly to preserve the guns as exculpatory evidence, she could have notified the police, her attorney in her arson case, or her probation officer. Also, there is no proof of extraordinary attendant circumstances in this case requiring emergency measures to avoid any sort of imminent public or private injury, as required under section 5-2-604. It is not error for the trial court to refuse to give a jury instruction if there is no basis in the evidence for giving it, even if the instruction contains a correct statement of law. *Pursley v. State, supra.* Because there was no basis in the evidence for giving a jury instruction on the choice-of-evils defense, the trial court did not err in refusing Whisenant's proffered instruction.

██ Because our reversal on the denial of the motion to suppress involves only the evidence found in Whisenant's purse, we affirm her conviction for possession of firearms by a felon, and reverse and remand the remaining convictions, because, while all of the evidence of financial identity fraud was not found in Whisenant's purse, we note that evidence from the purse was introduced with respect to all four counts.

Affirmed in part; reversed and remanded in part.

ROBBINS and BAKER, JJ., agree.