Ronnie B. LAUDERDALE *v.* STATE of Arkansas

CACR 02-1009                                        120 S.W.3d 106

Court of Appeals of Arkansas
Division I
Opinion delivered June 18, 2003

*Lewellen & Associates*, by: *Roy C. Lewellen*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Kelly K. Hill*, Ass't Att'y Gen., for appellee.

S AM BIRD, Judge. Appellant Ronnie Lauderdale entered a plea of nolo contendere to possession of cocaine in the Circuit Court of Crittenden County. He was sentenced to ten years in the Arkansas Department of Correction and fined $5000. In this appeal, he contends that the trial court erred by not granting his motion to suppress evidence found as a result of an illegal search. We reverse and remand for further proceedings consistent with this opinion.

In *Davis v. State*, 351 Ark. 406, 413, 94 S.W.3d 892, 896 (2003), our supreme court clarified the appropriate standard for review of a suppression challenge: "Our standard is that we conduct a *de novo* review based on the totality of the circumstances, reviewing findings of historical facts for clear error and determining whether those facts give rise to reasonable suspicion or probable cause, giving due weight to inferences drawn by the trial court."

On October 17, 2000, the United States Marshal Service, acting on a federal warrant for arrest for violation of probation, located Mr. Lauderdale at an apartment in Marion, Arkansas. The marshals ultimately arrested him for the probation violation and secured the residence. They also detained Keith McClendon after observing him exit a bathroom where they found in plain view what was suspected to be cocaine. Both individuals were handcuffed and seated on a couch in the living room of the apartment. Based on the discovery of suspected cocaine in the bathroom, the marshals contacted the Marion City Police. The marshals testified that they made a protective sweep through the apartment, and that after the sweep, there was no threat of harm to them by either Mr. Lauderdale or Mr. McClendon.

One of the marshals noticed a black bag that was near the couch on which both suspects were seated. Mr. Lauderdale claimed the bag and was asked if he would consent to a search of it. Mr. Lauderdale refused his consent to the search of the bag, the marshals did not search it based on their belief and experience that a search warrant would have been necessary to do so. The mar-

shals testified that neither Mr. Lauderdale nor Mr. McClendon had access to the bag or had the ability to remove any evidence from it. The Marion City Police were notified, and they arrived at the scene shortly thereafter.

Marion Police Officer John Millsap testified that when he arrived at the apartment with Officer Darren Richardson, the scene was secured and the marshals advised him that they had completed a walk-through of the house. At this time Officer Millsap field tested the substance found in the bathroom. It tested positive for cocaine. Meanwhile, Officer Richardson had gone into the living room and opened the black bag, where he found nearly twenty grams of suspected cocaine. Officer Millsap testified that he then telephoned his supervisor, Captain James Wilson, who directed him to attempt to get consent to search the residence. Mr. Lauderdale refused to consent to a search of the apartment, and Captain Wilson subsequently prepared an affidavit for a search warrant, with the affiant being Officer Millsap.

The affidavit described the items sought and referred to attached Exhibits A and B. Exhibit A consisted of a description of the places to be searched, and Exhibit B recited Officer Millsap's basis for seeking the warrant. His stated basis was limited to the marshals' discovery of cocaine in plain view in Lauderdale's bathroom. It did not refer to the black bag. Attachments to this exhibit included the marshals' arrest warrant and their individual written statements, which, with one exception, were also limited to the arrest and the discovery of the cocaine in the bathroom. The statement of Deputy Marshal Woods, however, contained a reference to the improper search of the black bag in the living room. Deputy Woods' statement presented to the issuing magistrate was that after the local officers arrived, they opened the bag and found more suspected narcotics.

Apparently, this statement was overlooked by Lauderdale, who neither refers to the statement in support of his argument here, nor includes the statement in his addendum.[1] It was also

---

[1] Lauderdale argued below, as he does on appeal, that the illegal search of the black bag, in and of itself, invalidated the search pursuant to the warrant, and he offers mere

apparently overlooked by the circuit court, as well, because the court stated in its ruling that the contents of the black bag were not used by the issuing magistrate as a basis for the search warrant. Furthermore, the record does not specifically indicate that the judge who issued the warrant even read Marshal Woods' statement, although he testified that he considered the affidavit and attachments in determining the existence of probable cause to issue the warrant. Nonetheless, the fact that the evidence obtained in the black bag was used as a basis for the search warrant is not dispositive.

## I. Admission of Evidence

### A. Warrantless Search of the Black Bag

Before determining the validity of the search warrant and admissibility of any evidence seized as a result, we must first determine if the search of the black bag was legal. We hold that it was not. Arkansas Rule of Criminal Procedure 12.5 (2001), is applicable in this case. Rule 12.5 states the following:

> SEARCH OF PREMISES: PERMISSIBLE CIRCUM-
> STANCES, TIME AND SCOPE.
>
> (a) If at the time of the arrest:
>
> (i) the accused is in or on premises all or part of which he is apparently entitled to occupy; and
>
> (ii) in view of the circumstances the officer has reason to believe that such premises or part thereof contain things which are:
>
> (A) subject to seizure; and
>
> (B) connected with the offense for which the arrest is made; and
>
> (C) likely to be removed or destroyed before a search warrant can be obtained and served; the arresting officer may search such premises or part thereof for such things, and seize any things subject to seizure.
>
> (b) Search of premises pursuant to subsection (a) shall only be made contemporaneously with the arrest, and search of build-

speculation that "[Officer] Millsap undoubtedly informed the magistrate of the discovery of these items" in the black bag when he appeared before the magistrate.

ing interiors shall only be made consequent upon an entry into the building made in order to effect an arrest therein. In determining the necessity for and scope of the search to be undertaken, the officer shall take into account, among other things, the nature of the offense for which the arrest is made, the behavior of the individual arrested and others on the premises, the size and other characteristics of the things to be searched for, and whether or not any such things are observed while making the arrest.

In this case, there was no evidence to show that entry into the black bag was necessary to prevent the destruction of evidence. In its ruling, the trial court stated:

If, if the evidence found in the black bag, the cocaine found in the black bag, were being introduced as a result of that search, and that search alone, the court would have some problems with that search, particularly in the face of a denial of consent and the fact that the court doesn't see much exigent circumstances insofar as the defendants were handcuffed, they didn't have access to the bag, the officers had already ascertained that there was no one else in the house to pose any threat.

█ Furthermore, there was testimony by the three federal marshals present at the scene that both Lauderdale and McClendon were handcuffed and seated on the couch. Marshal Bradbury testified that at this point there was no threat of Mr. Lauderdale or Mr. McClendon doing any harm to the officers, and that it was safe to assume that neither one had the ability to remove any evidence from the apartment or from the black bag. Marshal Boock testified that once under arrest, neither individual had any ability to do harm to the officers. Officer Richardson, the officer who conducted the search of the black bag, testified that when he arrived, both Mr. Lauderdale and Mr. McClendon were handcuffed and on the couch; and that he did not fear any physical threat to any of the officers when he began to search the black bag. Nonetheless, Officer Richardson stated that he was looking for weapons. Based on the foregoing facts, we conclude that the search of the black bag was illegal.

█ Since we hold that the initial search of the black bag was illegal, we now must decide if the evidence, including the contents of the black bag and all evidence discovered as a result of the search

warrant, was inadmissable. We note, however, that the evidence initially discovered in plain view in the bathroom was admissible. Arkansas Rule of Criminal Procedure 14.4 allows an officer who is otherwise lawfully present at a place, to seize an object that is in plain view, if its incriminating character is immediately apparent. *Fultz v. State*, 333 Ark. 586, 972 S.W.2d 222 (1998).

## B. The Search Warrant

█ The State urges this court to disregard the trial court's basis for denying Lauderdale's motion to suppress in that it incorrectly concluded that the issuing magistrate did not have illegally obtained information before it. In doing so, the State submits that we should look to *Murray v. United States*, 487 U.S. 533 (1988). The Arkansas appellate courts have only discussed *Murray* in two published opinions, *Fultz v. State*, 333 Ark. 586, 972 S.W.2d 222 (1998), and *Williams v. State*, 327 Ark. 213, 939 S.W.2d 264 (1997). In both cases, *Murray* was read to require a two-part test to determine whether the inclusion of illegally obtained information in an affidavit precludes the application of the independent-source doctrine. First, the appellate court examines the search warrant by excising the offending information from the probable cause affidavit and determines whether the affidavit nevertheless supports the issuance of a search warrant; second, the appellate court examines the motivation of the officer or officers who obtained the warrant and determines whether the motivation to obtain the warrant came as a result of discovering the tainted information, which in our case is the nearly twenty grams of cocaine found in the black bag. *See Williams*, 327 Ark. at 220-22, 939 S.W.2d at 268-69; *Fultz*, 333 Ark. at 594-95, 972 S.W.2d at 224-26.

In *Williams*, our supreme court stated:

> Having decided that the warrantless search was illegal, we move to the question of that illegality's effect on the validity of the warrant. While the exclusionary rule prohibits the introduction of tangible and testimonial evidence derived from an unlawful search, such evidence may nonetheless be admissible if discovered through an independent source. *See Murray v. United States*, 487 U.S. 533, 108 S. Ct. 2529, 101 L.Ed.2d 472 (1988). This tenet is referred to as the "independent-source doctrine." *Murray*

involved an illegal entry into a warehouse where all subsequent activity by the police officers was suspect. While unlawfully in the warehouse, the police officers observed bales of marijuana. They then sought a search warrant. The Court stated:

> The ultimate question, therefore, is whether the search pursuant to warrant was in fact a genuinely independent source of the information and tangible evidence at issue here. This would not have been the case if the agents' decision to seek the warrant was prompted by what they had seen during the illegal entry, or if information obtained during that entry was presented to the Magistrate and affected his decision to issue the warrant. *Murray*, 487 U.S. at 542, 108 S. Ct. at 2536. The first prong of *Murray* is usually approached by excising the offending information from the probable-cause affidavit and then determining whether the affidavit nevertheless supports the issuance of a search warrant. *See United States v. Restrepo*, 966 F.2d 964 (5th Cir. 1992), *cert. denied*, 506 U.S. 1049, 113 S. Ct. 968, 122 L.Ed.2d 124 (1993); *United States v. Herrold*, 962 F.2d 1131 (3rd Cir.), *cert. denied* 506 U.S. 958, 113 S. Ct. 421, 121 L.Ed.2d 344 (1992).

The affidavit in this case contained a wealth of information about the Williams's possible drug-trafficking activities. Even in the absence of the information obtained in the prior search, officers had detailed information from three confidential informants, plus the statement of Henry Glosemeyer, who had just come from the Williams's residence. Thus, the first prong of the *Murray* test weighs in favor of the validity of the warrant.

*Williams v. State*, 327 Ark. at 220-21, 939 S.W.2d at 268 (1997).

■ In our case, with respect to the first prong of *Murray*, even if we completely excise any mention of the black bag or its contents, there is still ample evidence in the "affidavit for search warrant" submitted to the trial judge to support the issuance of the search warrant. The remaining evidence consists partly of a rock-like substance that field tested positive for cocaine, along with several plastic baggies, all of which were found in plain view in the bathroom. Thus, we hold that the first prong of *Murray* is satisfied.

■ While we agree with the State that the first prong of *Murray* is satisfied as a result of the additional legally obtained evidence referred to in the affidavit for search warrant, the trial court

failed to address the second prong of *Murray*. We believe that an analysis of the second prong is an essential consideration in this case. With respect to the second prong of *Murray*, our supreme court stated:

> The second prong of *Murray* focuses on the motivation of the officers in obtaining the warrant. A key consideration in determining this issue is the "relative probative import" of the information secured during the illegal search "compared to all other information known to the officers." *United States v. Restrepo, supra,* at 972. While the police should not profit from illegal activity, neither should they be placed in a worse position than they would otherwise have occupied. *Murray,* 487 U.S. at 542, 108 S. Ct. at 2535–36.

> In the instant case, unlike the facts in *Murray*, there was no illegal entry. Kathlene Williams allowed the officers to enter the residence, and, while the officers testified that they informed Houston Williams that he could ask them to leave the residence at any time, he never requested that they do so. Furthermore, we think it significant that, when Officer Norman contacted the prosecutor's office about obtaining a warrant prior to entering the residence, he was advised that he lacked probable cause. Thus, we cannot agree that there was a complete absence of motivation on the part of the officers to seek a warrant prior to the lawful entry and subsequent illegal search.

> Immediately upon lawfully entering the house, Officer Norman observed a Smith & Wesson .9 millimeter automatic pistol on top of a dresser. While the officers were present, Ronald Fox, whom they had documented as dealing in methamphetamine, arrived at the home but would not enter the residence. This evidence, obtained prior to the illegal search, could be properly considered by the issuing magistrate.

> When asked at the suppression hearing to explain the basis for his request for a search warrant of the Williams residence, Officer Norman reviewed not the items seized from the illegal search, but the information received from the confidential informants, the statement acquired from Glosemeyer, and the surveillance conducted by officers. In light of this testimony, we cannot conclude that the officers were prompted to obtain the search warrant after obtaining the tainted information. In any event, as the officers collected ample information to support a search warrant,

independent of and prior to the items found in the illegal search, we hold that the independent-source doctrine permitted the introduction of evidence seized after the search warrant. To hold otherwise, we would be placing the officers in a worse position than they would otherwise have occupied. Under these circumstances, we affirm the trial court's order upholding the validity of the warrant.

*Williams v. State*, 327 Ark. at 221-22, 939 S.W.2d at 268-69 (1997).

Another case cited within *Murray* and relied upon by our supreme court in *Williams v. State* is *United States v. Restrepo*, 966 F.2d 964 (5th Cir. 1992), *cert. denied*, 506 U.S. 1049 (1993). The court in *Restrepo* clearly defined the second prong of *Murray*:

## B. MOTIVATION: MURRAY'S NEW REQUIREMENT

*Murray* states that a search pursuant to warrant is not a genuinely independent source of evidence "if the agents' decision to seek the warrant was prompted by what they had seen during the initial [illegal] entry." [FN20] Thus, *Murray* instructs the trial court to determine— separate and apart from its determination of whether the expurgated warrant affidavit contains probable cause [FN21]—whether information gained through the illegal search influenced or motivated the officers' decision to procure a warrant. [FN22] In this case, therefore, this inquiry is answered in the negative if the district court finds that "the agents would have sought a warrant if they had not earlier entered" the Regency residence. [FN23] As LaFave explains, *Murray* is intended to deal with "the so-called 'confirmatory search,' conducted for the precise reason of making sure it is worth the effort to obtain a search warrant." [FN24]

FN20. 108 S. Ct. at 2535.

FN21. "*Murray* is most significant precisely because the majority refused to follow the rather common position taken by the lower courts, namely, that the fruit-of-the-poisonous-tree issue presented by cases of this genre can be resolved by focusing *only* upon the question of whether facts obtained by the prior illegal action were critical to the probable cause finding supporting the warrant." Wayne R. LaFave, *Search and Seizure*, §§ 11.4(f), at 70 [1992 Supp.] (2d ed. 1987).

FN22. *Accord U.S. v. Mithun*, 933 F.2d 631, 636 (8th Cir. 1991) (agent's decision to seek warrant not prompted by seeing flash suppressor); *U.S. v. Bosse*, 898 F.2d 113, 116 (9th Cir. 1990) (remanding to determine effect of illegal entry and search on the officers' decision to seek warrant); *U.S. v. Halliman*, 923 F.2d 873, 880 (D.C.Cir. 1991) (finding that prior entry did not influence decision to seek warrant not clearly erroneous).

FN23. *Murray*, 108 S. Ct. at 2536.

FN24. LaFave, *Search and Seizure*, §§ 11.4(f), at 70 [1992 Supp.].

Here, the district court did not consider whether the results of the illegal search of Regency prompted or motivated the officers' decision to seek the warrant. As motivation is a question of fact, we remand this issue to the district court. We nonetheless point out, by way of guidance only, that, unlike the objective test of whether the expurgated affidavit constitutes probable cause to issue the warrant, the core judicial inquiry before the district court on remand is a subjective one: whether information gained in the illegal search prompted the officers to seek a warrant to search Regency. In the best of all possible worlds, of course, there will be statements or other evidence directly probative of motivation or effect. But in the usual case, in which direct evidence of subjective intent is absent, a court must infer motivation from the totality of facts and circumstances.

966 F.2d at 971-72.

In *Williams v. State*, 327 Ark. at 221, 939 S.W.2d at 268-69, our supreme court took specific note of the fact that the officer had the intention of obtaining a search warrant. In *Williams*, the court stated:

Furthermore, we think it significant that, when Officer Norman contacted the prosecutor's office about obtaining a warrant prior to entering the residence, he was advised that he lacked probable cause. Thus, we cannot agree that there was a complete absence of motivation on the part of the officers to seek a warrant prior to the lawful entry and subsequent illegal search.

In *Fultz v. State*, 333 Ark. at 594-95, 972 S.W.2d at 225-26, our supreme court once again addressed both the first and second prong of *Murray*, stating:

Next, Mrs. Fultz challenges the validity of the search warrant and the admission of all evidence retrieved pursuant to it because the suppressed evidence discovered in her purse provided part of the probable cause for the affidavit for the search warrant. Although our initial inquiry might be whether the purse search was valid, assuming, *arguendo*, that it was invalid, we must determine whether the inclusion of that evidence in the affidavit defeats the warrant. In *Williams v. State*, 327 Ark. 213, 939 S.W.2d 264 (1997), this court held that offending information can be excised from a probable cause affidavit to determine if the affidavit nevertheless supports the issuance of a search warrant, and evidence may be admissible if discovered through an independent source. *Id.* at 220, 939 S.W.2d 264 (*citing Murray v. United States*, 487 U.S. 533, 108 S. Ct. 2529, 101 L.Ed.2d 472 (1988)). However, the warrant can be defeated if the officer's motivation for the warrant arose from evidence discovered during the illegal search. This court also noted in *Williams* that the "relative probative import" of the illegally obtained information should be considered as compared to "all other information known to the officers." *Id.*, at 221, 939 S.W.2d 264 (*citing Murray*, 487 U.S. 533, 108 S. Ct. 2529, 101 L.Ed.2d 472; *United States v. Restrepo*, 966 F.2d 964 (5th Cir. 1992), *cert. denied*, 506 U.S. 1049, 113 S. Ct. 968, 122 L.Ed.2d 124 (1993)).

Applying these factors in the instant case and excising the evidence discovered in the purse, the search warrant was, nevertheless, independently supported by probable cause. When viewed in the light most favorable to the State, the evidence in the purse was of little probative value compared to all of the other information known by the officers. For example, based on Mr. Fultz's statements and the smell in the car, there was ample information to independently support the warrant. Arguably, the evidence in the purse was of so little probative value that neither the purse nor its contents were seized. The trial court did not err in finding that the evidence in the purse was not the primary motivation for the officer's obtaining a warrant. Accordingly, its refusal to suppress the evidence found during the execution of the search warrant was not erroneous.

■ Again, while we have only two cases from our supreme court to use for guidance in this matter, it is clear that both prongs of *Murray* must be addressed when discussing the admissibility of evidence obtained through a search warrant after illegally obtained information had been utilized to determine whether there was

probable cause to support the warrant. In *Williams,* our supreme court examined evidence which clearly indicated that the officer was properly motivated to obtain a search warrant before the discovery of the tainted information. *Williams v. State,* 327 Ark. at 221, 939 S.W.2d at 268-69. In *Fultz,* our supreme court noted that the trial court had made a finding that the illegally obtained evidence was not the primary motivation for obtaining a warrant. 333 Ark. at 595, 972 S.W.2d at 225. In the case now before us, it is unclear whether the officers were motivated to obtain a search warrant before the discovery of the nearly twenty grams of cocaine in the black bag. In fact, there is evidence to the contrary.

It is clear from the federal marshals' testimony that they had no intention whatsoever of procuring a search warrant. In fact, one of the officers stated that he did not look in the black bag when he was denied consent because he did not want to be subpoenaed to court to testify. Thus, we are left with the question of whether the Marion officers had the intention of seeking a search warrant before they conducted the illegal search of the black bag.

The facts tend to indicate that the Marion officers field tested both the evidence found in the bathroom and the evidence found in the black bag prior to calling Captain Wilson for instructions. Additionally, once he was contacted, there is evidence that Captain Wilson first asked the Marion officers to attempt to obtain a written consent to search the premises, and only when that failed did Captain Wilson request the search warrant. Without speculation, it is a difficult task for this court to decide whether the Marion officers would have sought a warrant if they had not earlier illegally searched the black bag and found the nearly twenty grams of suspected cocaine; especially in light of the fact that the illegal narcotics found in the black bag constituted the largest find of narcotics in the apartment.

In this case, as in *Restrepo,* the trial court did not consider whether the results of the illegal search prompted or motivated the officers' decision to seek the search warrant. We note the potential difficulty of this determination. The trial court may well not have any new evidence before it to examine before making its decision. However, we point out for guidance only, that there may be evidence of past practices of the police officers, past conduct of the officers, standard operating procedures, or other

evidence that may shed light on whether the illegally obtained evidence motivated the officers to apply for the search warrant. As the court in *Restrepo* pointed out, "[i]n the best of all possible worlds, of course, there will be statements or other evidence directly probative of motivation or effect. But in the usual case, in which direct evidence of subjective intent is absent, a court must infer motivation from the totality of facts and circumstances." 966 F.2d at 972. Nonetheless, our supreme court has chosen to follow *Murray*, and as motivation is a question of fact, we are compelled to remand this case to the trial court to determine what motivated the officers' decision to seek a search warrant.

Reversed and remanded for further proceedings consistent with this opinion.

VAUGHT, J., agrees.

GLADWIN, J., concurs.

ROBERT J. GLADWIN, Judge, concurring. I concur with the majority. I agree that the initial search of the black bag was illegal and that the independent-source doctrine applies.

I also agree that *Murray v. United States*, 487 U. S. 533 (1988), requires application of the two-prong test and that, after excising the offending information from the affidavit for the search warrant, the remaining facts nonetheless support the issuance of the search warrant.

Finally, I agree that the trial judge did not specifically address the officers' motivation for seeking the search warrant, which is the second prong under *Murray*. The key consideration in determining this issue is "the relative probable import of the information secured during the illegal search compared to all other information known to the officers." *U.S. v. Restrepo*, 966 F.2d 964 (5th Cir. 1992).

In *Williams v. State*, 327 Ark. 213, 221, 939 S.W.2d 264, 269 (1997), the Arkansas Supreme Court discussed the second prong of *Murray* and noted:

> When asked at the suppression hearing to explain the basis for his request for a search warrant of the Williams' residence, Officer Norman reviewed not the items seized from the illegal search, but the information received from the confidential informants,

the statements acquired from Glosemeyer, and the surveillance conducted by officers. In light of this testimony, we cannot conclude that the officers were prompted to obtain the search warrant after obtaining the tainted information.

327 Ark. at 221.

In the present case, the testimony was that the federal officers went to the appellant's residence to serve a federal warrant for probation violation, that they lawfully found cocaine and drug paraphernalia, that they requested consent to search the bag, and that the black bag was mentioned in only one of several affidavits attached to the search warrant. I believe that, in light of this testimony, we cannot conclude that the officers were prompted to obtain the search warrant after obtaining the tainted information and that we could follow the holding in *Williams*.